IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                        No. Crim. 99-1338 BB

ALFRED HEINZ REUMAYR,

        Defendant.

### ANALYSIS AND RECOMMENDED DISPOSITION
### ON DEFENDANT'S MOTION TO DISMISS OR QUASH INDICTMENT
### AND PLAINTIFF'S MOTION TO STRIKE[1]

THIS MATTER comes before the Court on Defendant Alfred Heinz Reumayr's ("Reumayr's") Motion to Dismiss Proceeding or Quash Indictment [Doc. 11]. The United States filed a Motion to Strike, and Response to, the Motion to Dismiss or Quash [Doc. 12] and asks the Court to strike Reumayr's motion on the basis of the "fugitive disentitlement doctrine." No reply is necessary.

This matter has been referred to a magistrate judge for a report recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons given below, the Court recommends that Reumayr's motion be stricken.

### Factual and Procedural Background

Reumayr, a citizen and resident of Canada, was named in a criminal complaint [Doc. 1] filed on August 13, 1999. He was accused of attempting, and aiding and abetting in an attempt, to bomb

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

the Trans-Alaska pipeline by, *inter alia*, sending letters and e-mail communications to a former prison colleague living in Albuquerque, New Mexico who was at the time of the correspondence acting as a confidential informant for the agency then known as the United States Bureau of Alcohol, Tobacco and Firearms.  A warrant for Reumayr's arrest was issued on August 13, 1999.

On November 19, 1999, the Grand Jury returned an eight-count indictment [Doc. 6], charging Reumayr with maliciously attempting to damage and destroy by explosives property used in an activity affecting commerce; knowingly and wilfully attempting to damage the property of an energy facility (*i.e.*, the Trans-Alaska pipeline); knowingly possessing a firearm in furtherance of a crime of violence, namely the attempt to damage and destroy the pipeline; and intentionally attempting to cause a substantial interruption and impairment of a public utility in violation of Alaska state statutes.

Reumayr remains in Canada and has never been arrested on the warrant issued by this Court. However, the United States asserts in its Motion to Strike that Reumayr was arrested in Canada by the Royal Canadian Mounted Police on August 17, 1999 and that he has been resisting extradition for the past five years [Doc. 12, at 1].  Reumayr does not dispute this assertion and states in his Motion that the extradition process is still underway in Canada [Doc. 11, at 1-2].  Some five years after the indictment was handed down, Reumayr now comes to this Court with a *pro se* motion asking that the prosecution be dismissed on grounds that the United States lacks jurisdiction over his person and over the alleged criminal conduct.

## Discussion

As noted above, the United States urges the Court to strike Reumayr's Motion to Dismiss on the basis of the discretionary "fugitive disentitlement doctrine," under which a court may decline to entertain requests for relief from a fugitive from justice who attempts to invoke the protections of the

court while remaining outside the reach of its authority.

In his Motion to Dismiss, Reumayr raises several issues, including the argument that this Court lacks jurisdiction over his person or over the asserted conduct, because:

> all conduct by the defendant occurred in Canada. No conduct by the defendant occurred in the United States and as none of the conduct in Canada rose to the level of having any effect on the U.S., the United States lacks territorial jurisdiction over the defendant or the conduct for which he is charged.

[Doc. 11, at 2].

It is unclear whether Reumayr is asserting a lack of subject matter, or personal, jurisdiction, but the Court need not make that determination at this time. It is the general rule that a lack of subject matter jurisdiction may be raised by any party at any time in the proceedings and, if necessary, the court may raise the issue *sua sponte*. Fed. R. Crim. P. 12(b)(3)(B); United States v. Chambers, 944 F.2d 1253, 1260 (6th Cir. 1991); United States v. Stewart, 727 F. Supp. 1068, 1069 (N.D. Tex. 1989). However, the Court finds that the question of dismissal on the grounds asserted by Reumayr would best be left for determination at a time when Reumayr is actually before the Court rather than in a foreign country resisting extradition.

The United States argues that Reumayr is a "fugitive" for purposes of the fugitive disentitlement doctrine, and that he should therefore be precluded from asking this Court for any relief at all. This doctrine most often arises in cases where a person convicted of a crime appeals the conviction but then goes missing while awaiting the outcome of the appeal. Courts will generally dismiss the appeal in these cases, on grounds that:

> No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him

3

>pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.

Molinari v. New Jersey, 396 U.S. 365, 366, 90 S. Ct. 498, 498-99 (1970), *citing*, Smith v. United States, 94 U.S. 97 (1876) ("It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ [of error], is where he can be made to respond to any judgment we may render").

The Tenth Circuit follows the fugitive disentitlement doctrine and has dismissed appeals by absconding convicted defendants in the circumstances presented by the Molinari case. *See*, *e.g.*, United States v. O'Neal, 453 F.2d 344 (10th Cir. 1972); United States v. Swigart, 490 F.2d 914, 915 (10th Cir. 1973) ("we believe any court has the inherent discretion to refuse to hear the claim of a litigant who is willing to comply with that court's decree only if it is favorable"); Brinlee v. Crisp, 608 F.2d 839 (10th Cir. 1979) (state court's dismissal of escapee's direct criminal appeal was not a denial of due process).

In United States v. Hanzlicek, 187 F.3d 1219, 1220-21 (10th Cir. 1999), the Tenth Circuit dismissed the appeal of a convicted defendant who fled during his term of supervised release. The court declined to consider the argument of the fugitive's attorney that his client's flight was caused by a "mental defect instead of a volitional act," the court finding that this claim was "incapable of being tested via the adversarial process because of Hanzlicek's fugitive status."

*See also*, United States v. Timbers Preserve, 999 F.2d 452 (10th Cir. 1993) (fugitive was not permitted to contest forfeiture proceedings connected to the alleged drug operation for which he was indicted, on grounds that "a fugitive from justice should not be able to use the judicial system while

4

at the same time avoiding it"); Lopez v. Malley, 552 F.2d 682 (10th Cir. 1977) ("The reasons for dismissing the appeal of an escaped prisoner are equally applicable to [habeas corpus claims]"); and Seibert v. Johnston, 381 F. Supp. 277, 280 (E.D. Okla. 1974) (Section 1983 suit by prisoner complaining of conditions of confinement, dismissed when plaintiff escaped from prison, the court finding plaintiff "disentitled 'to call upon the resources of the Court for determination of his claims'").

There is no indication in this case that Reumayr escaped from the custody of New Mexico officials or fled the jurisdiction to avoid prosecution; indeed, there is nothing on the record to show that Reumayr was ever physically present in New Mexico. But direct escape or flight are not necessary requisites for application of the fugitive disentitlement doctrine; actively resisting extradition is sufficient to render the resisting individual a "fugitive" for purposes of the doctrine. United States v. Catino, 735 F2d 718, 722 (2d Cir. 1984).

*See also*, Schuster v. United States, 765 F2d 1047, 1050 (11th Cir. 1985) ("whatever Schuster's intent may have been when she left the United States, she has certainly since established her status as a fugitive from this nation's criminal process, particularly as of the moment she chose to resist extradition"); United States v. Nabepanha, 200 F.R.D. 480, 482-83 (S.D. Fla. 2001) (an indicted person who "knows of charges against him and actively absents himself from this jurisdiction" is subject to the doctrine); United States v. Oliveri, 190 F. Supp. 2d 933 (S.D. Tex. 2001) (doctrine applicable to defendant who "is purposely absenting himself from the United States in order to avoid arrest and arraignment"); United States v. Eagleson, 874 F. Supp. 27 (D. Mass. 1994); United States v. Noriega, 683 F. Supp. 1373 (S.D. Fla. 1988).

The Court finds this case to be an appropriate occasion for exercise of judicial discretion in

favor of applying the fugitive disentitlement doctrine. Reumayr has avoided facing the charges lodged against him in this District for five years, and he now applies to this Court for relief in the form of dismissal of the charges. The equitable considerations underlying the fugitive disentitlement doctrine, and practical considerations as well, counsel a conservative approach to undertaking resolution of the jurisdictional issues until such time as all parties are properly before the Court.

The Court recognizes that the equities are different in cases involving pretrial motions brought by indicted persons who retain the presumption of innocence, than in cases involving convicted persons who flee pending appeal. Nevertheless:

> The doctrine of fugitive disentitlement rests on a principle of mutuality. The rationale is that a court should not afford a fugitive, who is unwilling to submit to its jurisdiction and stand trial for an alleged crime, the opportunity to improve his position by challenging the jurisdiction of the court.

United States v. Eagleson, *supra*, 874 F. Supp. at 29.

Some courts have allowed fugitives to challenge the basis of their indictments, *see*, *e.g.*, United States v. Noriega, *supra*; and United States v. Shapiro, 391 F. Supp. 689 (S.D.N.Y. 1975). However, Noriega is distinguishable due to Noriega's "unique status as the *de facto* head of a foreign government indicted for using his position to commit the crimes alleged," which meant his prosecution was "fraught with political overtones" missing from the present case. Noriega, *supra*, at 1374, 1375-75. And the court in Shapiro emphasized the discretionary nature of its decision to consider the motion to dismiss on the merits, noting *inter alia* that the defendant in that case represented to the court, through counsel, that "if the jurisdictional issue were decided against [him] . . ., he would surrender promptly to permit a determination on the merits," and he had a strong incentive to do so, because of the potential application of an amnesty program. Id., at 693 & n.2.

No such factors are present in this case, and the Court will exercise its discretion in the opposite direction.

This case is more similar to that of the defendant in United States v. Oliveri, *supra*, where the court describes movant's position as an "attemp[t] to invoke only half our jurisdiction, *i.e.*, the winning side" (*quoting from* Dawkins v. Mitchell, 437 F.2d 646, 649 (D.C. Cir. 1970)). As the court in Oliveri concluded:

> It appears that Oliveri is attempting to obtain the benefit of a favorable ruling from this court without risking the burdens that may flow from an adverse ruling. If this court were to decide, on the merits, not to dismiss the indictment against Oliveri, such a ruling would have no effect on Oliveri because he could remain outside the jurisdiction of this court. On the other hand, if the court were to dismiss the indictment against Oliveri, he would obtain a significant benefit from this court at no risk to him. Absent some special circumstance, or overriding policy concern, this court refuses to bestow such a benefit on Oliveri. Moreover, the court notes that reaching the merits of a fugitive's pretrial motion may encourage others in the same position to take flight from justice.

United States v. Oliveri, *supra*, at 936.

"By his actions, [Reumayr] . . . is telling this court that he will submit to its decree only if it is to his liking. We do not believe that any court is compelled to adjudicate the rights of a litigant [only] on his own terms." Johnson v. Laird, 432 F.2d 77, 79 (9th Cir. 1970). Consideration of the merits of Reumayr's motion should await the time when he submits himself to the authority of the Court.

## **Recommended Disposition**

That the United States' Motion to Strike [Doc. 12] be granted, and that Defendant Reumayr's Motion to Dismiss Proceeding or Quash Indictment [Doc. 11] be stricken from the record.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge