IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                 No. CR 99-1338 BB

ALFRED HEINZ REUMAYR,

        Defendant.

### MEMORANDUM OPINION
### AND
### ORDER DENYING MOTION TO DISMISS ALL CHARGES
### RELATING TO DESTRUCTIVE DEVICE

**THIS MATTER** is before the Court on *Defendant Reumayr's Motion to Dismiss All Charges Alleging that Defendant Reumayr Possessed a Destructive Device* [Doc. 101]. The Court having reviewed all the submissions of counsel and being otherwise informed, finds the Motion must be Denied.

*Discussion*

Counts III, V, and VI of the Indictment allege violations of 18 U.S.C. § 924(c)(1). Defendant argues at the time of Defendant's arrest "he did not possess an operational bomb, grenade, rocket, missile, mine or other similar device under 18 U.S.C. § 921(a)(4)(A)." He constructs this argument on the premise that since James Paxton was the lynchpin, the whole plot was impossible. He reasons as follows:

> **James Paxton was an undercover government agent.  In that role, James Paxton did not intend to provide any of the essential materials, *i.e.*, the TNT, C-4, or the fuming acid, so that the alleged bomb could be made.  In fact, James Paxton never did supply those items, which made it impossible for the bomb James Paxton designed to ever be built.**

**Def.'s Mot. at 5.  He concludes that since Paxton failed to deliver the materials allegedly being discussed to create the size bombs necessary to blow up the Alaska Pipeline, those bombs could not be "readily assembled" as required by 18 U.S.C. § 921.**

**The Government provides evidence that Defendant**

**i.    Synthesized a quantity of the high explosive PETN, which he delivered to Mr. Paxton in July 1999,**
**ii.   Designed time bombs, including designing and testing components of the controllers for the bombs,**
**iii.  Obtained PVC pipe and parts to use as housings,**
**iv.   Assembled control modules designed to be weather-proof and programmed to go off from January 1-14, 2000, and**
**v.    Gave Mr. Paxton his completed "pipes/disks/controllers"....**

**Gov't's Resp. at 7-8.**

**It appears correct that Defendant lacked sufficient PETN at the time of his arrest to create the exact bombs Defendant contemplated, but there seems to be no dispute that explosives were found when the Royal Canadian Mounted Police searched Defendant's home.  This is all that is necessary.  Defendant's argument that the absence of a specific contemplated detonating device is necessary has been repeatedly rejected under identical language in an analogous statute.**

**In *United States v. Greer*, 588 F.2d 1151 (6th Cir. 1978), defendant was convicted of conspiracy to possess an "unregistered destructive device."  As here, defendant**

possessed a package containing primers and blasting caps but no source of detonation, and he therefore argued no destructive device could be "readily assembled" from the components he possessed. The Sixth Circuit affirmed noting the explosives expert for the Bureau of Alcohol, Tobacco and Firearms testified that "the package contained all the explosive components you need" and that the blasting caps could be detonated by readily available electric current or even by impact. 588 F.2d at 1154.

The court in *United States v. Russell*, 468 F. Supp. 322 (S.D. Tex. 1979), faced an analogous fact pattern. Defendant was charged with possession of a destructive device and moved to dismiss the indictment arguing he did not possess the necessary detonation igniter. Similar to the present case, Robert Valadez, an undercover Alcohol, Tobacco and Firearms agent, purchased C-4 plastic explosives from the defendant. Valadez then asked about how to explode the C-4 and defendant returned with blasting caps and legwire. Defendant explained the legwire should be connected to a car battery. Defendant moved to dismiss the destructive device charge on the ground the bomb could not be "readily assembled" without a source of ignition actually present. In rejecting that argument and finding the material provided could be "readily assembled" into a destructive device, the court said:

> The Defendant in the present case not only supplied Valadez with the explosive material, but he equipped the agent with all the necessary component parts. In this case, there was no need for Valadez to purchase the power source. As the Defendant informed Valadez and as Russell Cooper testified at the trial, the device could be armed by wiring it to a car battery. Russell Cooper explained that the firing of the blasting cap

3

> which would in turn detonate the dynamite requires a force of only .5 amperes. Since the starting power of an automobile battery is forty amperes, the turning of the key in the ignition would be more than sufficient to detonate the device and cause the destruction of the automobile. Assuming that the object to be destroyed was not a car, the bomber would need nothing more than a 1.5 volt battery to set off the device. In such instances, the energy source is really not essential to the device. *See, e.g., United States v. Greer*, 404 F. Supp. at 1293 (battery or static electricity could have set off the blasting caps).

468 F. Supp. at 330.

Both *Greer* and *Russell* found a destructive device could be "readily assembled" by an easily obtainable detonator. Here, Defendant Reumayr had delivered a small amount of PETN as well as the pipes, disks, and controllers to Paxton. Whether and how these materials could be "readily assembled" into a destructive device will have to await expert testimony of the type provided in *Greer* and *Russell*. Here, there appears to be at least a jury question as to whether the materials assembled by Defendant at the time of his arrest could be "readily assembled" into a "destructive device." *See United States v. Morningstar*, 456 F.2d 278, 281 (4th Cir. 1972) (reversing district court dismissal of indictment and finding a jury issue).

## O R D E R

For the above stated reasons, *Defendant Reumayr's Motion to Dismiss All Charges Alleging that Defendant Reumayr Possessed a Destructive Device* is **DENIED.**

**SO ORDERED** this 13th day of December, 2007.

                                                      **BRUCE D. BLACK**
                                                      **United States District Judge**