IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**          **No. CR 99-1338 BB**

**ALFRED HEINZ REUMAYR,**

      **Defendant.**

### MEMORANDUM OPINION
### AND
### ORDER DENYING MOTION TO DISMISS
### ATTEMPTED CRIMINAL ACTS

**THIS MATTER** is before the Court on *Defendant Reumayr's Motion to Dismiss All Charges Alleging that Defendant Reumayr Attempted Criminal Acts* [Doc. 102], and the Court having reviewed all submissions of counsel and researched the matter thoroughly, finds the Motion must be Denied.

*Discussion*

**Defendant** bases his motion on the contention that "the District Court lacks personal jurisdiction to prosecute Defendant Reumayr on these charges under the United States' extradition treaty with Canada, 27 U.S.T. 982 *et seq.*, the Fifth Amendment, [and] the doctrine announced in *United States v. Vreeken*, 803 F.2d 1085, 1088 (10th Cir. 1986)." (Def.'s Mot. p. 1).

**Canadian Treaty and *Vreeken***

**Defendant's argument rests on the premise that although the British Columbia courts eventually certified his extradition, in one of its preliminary findings the Supreme Court of British Columbia stated Reumayr had not "gone beyond mere preparation as that expression is used in the authorities concerning the law of attempt." (Def.'s Mot. p. 2 quoting Doc. 82, Ex. A, p. 12). This is apparently based on the Canadian court's understanding of the requirement for their crime of attempt. The Canadian court seems to have been concerned that the "bombs were far from complete, the principal explosive content of those bombs had not yet been obtained and the final sites had not been chosen or checked. At the time of his arrest, Reumayr was far removed from the potential targets, both geographically and temporally." (Def.'s Mot. citing Doc. 82, Ex. A, pp. 12-13).**

**After further investigation and dialogue with an Assistant United States Attorney from New Mexico, where Defendant Reumayr had already been indicted, the Canadian Minister of Justice represented to the Canadian court that under United States law "the facts found by courts of British Columbia would support Reumayr's conviction of the attempt charges set forth in Counts 1, 2, 4, and 6 of the Indictment." (Def.'s Mot. p. 3 quoting Ex. C, p 1). The Court of Appeal for British Columbia then upheld the Minister's Order of Deportation in a 19-page opinion. In May 2002, the Minister of Justice signed an Order of Surrender "for the offences of attempting to bomb the**

Trans-Alaska Pipeline," and ordered "Mr. Reumayr's surrender on all counts." (Gov't's Resp. [doc. 117] quoting the letter order of Minister of Justice).

Reumayr now contends that the British Columbia Court of Appeal decided the matter wrongly when it determined Reumayr could be extradited to face charges in the United States even though there was insufficient evidence to sustain a Canadian conviction under their statutory requirements for "attempt."

Defendant maintains that "[u]nder *Vreeken*, extradition is the process by which the federal court 'gains personal jurisdiction....'" (Def.'s Mot. p. 5 quoting *Vreeken*, 803 F.2d at 1088). He then cites *United States v. Rauscher*, 119 U.S. 407 (1886), and *United States v. Alvarez-Machain*, 504 U.S. 655, 667 (1992), for the proposition that pursuant to the U.S. Const. art. VI, cl. 2, the Treaty must be recognized as the supreme law of the land, and the preeminent source of this Court's authority over Reumayr. (Def.'s Mot. p. 6). While this Court thinks Reumayr may overestimate the importance of the Treaty in this context,[1] it makes no difference because nothing presented to this Court indicates a violation of the extradition treaty with Canada. 27 U.S.T. 982 *et seq.* (hereinafter "the Treaty").

The Extradition Treaty was signed in 1971 with the hope that extradition between Canada and the United States could be simplified. *See* **James D. McCann,**

---

[1] *See United States v. Li*, 206 F.3d 56 (1st Cir. 2000) (Irrespective of the treaty rights involved, remedies do not preclude suppression of evidence or dismissal of the indictment.). Indeed, in the case relied upon by Reumayr, *United States v. Alvarez-Machain*, since the Mexican extradition treaty did not expressly prohibit kidnapping its citizens, there was no treaty violation; but in any event, the federal district court had jurisdiction. *See also United States v. Matta-Ballesteros*, 71 F.3d 754 (9th Cir. 1995) (same on citizen of Honduras).

Note, *United States v. Jamieson: The Role of the Canadian Charter in Canadian Extradition Law*, 30 Cornell Int'l L.J. 139 (1997) (hereinafter "McCann").  The Treaty originally required that the extradition crimes be enumerated.  This was eliminated and replaced by a "double criminality" requirement whereby

> "[e]xtradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment."

Thomas Rose, Note, *A Delicate Balance: Extradition, Sovereignty, and Individual Rights in the United States and Canada*, 27 Yale J. Int'l L. 193, 198 (2002) (hereinafter "Rose") (quoting Protocol Amending Extraditional Treaty, Jan. 11, 1988, art. I).

This amendment has a dispositive impact on Defendant's double criminality argument.  Simply, the Treaty does not now require that Canada define "attempt" in the same terms as the United States, but only that the conduct for which extradition is sought is of a nature "which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year ...," *i.e.*, a felony.  The initial concern of the Supreme Court of British Columbia that Reumayr could not be charged with "attempt" under Canadian law was therefore irrelevant under the Treaty since Reumayr was charged with Canadian felonies for this conduct.  McCann, *supra*, 30 Corn. Int'l L.J. at 149; Rose, *supra*, 27 Yale J. Int'l L. at 199.  This is also consistent with the conclusion of the Canadian Minister of Justice that, "It is not necessary that the equivalent Canadian offence have

the same name or the same elements as the foreign offense."  (Disc. 600006058, as quoted in Gov't's Br. p. 4).

### *Fifth Amendment*

By citing the Fifth Amendment, Reumayr apparently (explicit argument is lacking) means to advance some claim that Due Process was violated during the extradition proceedings.  However, Due Process provides no direct redress for claims based on criminal extradition that is regulated by a treaty.  *Matter of Extradition of Kraiselburd*, 786 F.2d 1395, 1398 (9th Cir. 1986).

### O R D E R

For the above stated reasons, *Defendant Reumayr's Motion to Dismiss All Charges Alleging that Defendant Reumayr Attempted Criminal Acts* is DENIED.

SO ORDERED this 13th day of December, 2007.

**BRUCE D. BLACK**
**United States District Judge**