IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.    No. CR 99-1338 BB

ALFRED HEINZ REUMAYR,

      Defendant.

**MEMORANDUM OPINION
AND
ORDER DENYING MOTION TO DISMISS BASED ON
ENTRAPMENT AS A MATTER OF LAW**

**THIS MATTER** is before the Court on *Defendant Reumayr's Motion to Dismiss Based on Entrapment as a Matter of Law* [Doc. 104]. Having reviewed all submissions of counsel and performed independent legal research, Defendant's Motion must be Denied at this time.

*Discussion*

Defendant argues "he was entrapped as a matter of law, and this prosecution violates due process." (Def.'s Mot. p. 1). He presents three theories in support of this position: (1) the Government created the crime for which Defendant is indicted; (2) the Government cannot show Defendant was capable of committing the crime without the

help of confidential informant James Paxton; and (3) the Government conduct was extreme and outrageous. (Def.'s Mot. p. 4). These will be considered "seriatim."

I.   *Government creation of the crime*

Plaintiff bases this argument upon the following understanding of the facts:

> The bomb that the Indictment contemplates was designed by Paxton, the government informant, and never built. Paxton's design was for a pipe bomb manufactured from ordinary PVC pipe. The primary explosive material that James Paxton planned on using to fuel the bomb was TNT, which Paxton was going to supply. Paxton was also the source of the expertise on what would be required and how it would be put together. Given the low arctic temperatures, Paxton informed Defendant Reumayr, C-4 was not a reliable explosive for the job and that they would have to use TNT. To make the TNT work, however, Paxton requested that Defendant Reumayr make a booster explosive, PETN, so the TNT would detonate property (*sic*). Defendant Reumayr is alleged to have agreed to this plan. However, he could not physically make PETN, he said, without the precurser (*sic*) chemical which was unavialable (*sic*) to him. Paxton was to provide the precursor chemical. Reumayr allegedly told Paxton that in order to make a sufficient quantity of the PETN, he would need "8 quarts" of white fuming acid. Doc. No. 6, p. 13, ¶ 9(t). As was the case with the TNT, James Paxton was to supply the acid. The indictment alleges that on July 27 & 28 1999 Defendant Reumayr requested that James Paxton obtain white fuming acid and that after James Paxton provided the fuming acid it would take Defendant Reumary (*sic*) two days to produce PETN (an explosive booster material for the alleged destructive device) using that acid.
>
>   Of course Paxton never did provide or intend to provide either the while fuming nitric acid nor other components (i.e., the C-4 or TNT) that were indispensable explosive components for the alleged destructive device that James Paxton had designed to incapacitate the Trans-Alaska Pipeline.

(Def.'s Mot. pp. 2-3) (Bates stamp numbers omitted).

If these facts were uncontroverted, Defendant might have an argument for entrapment as a matter of law. *See United States v. Pardue*, 983 F.2d 835 (8th Cir. 1993). However, and not surprisingly, the Government offers an alternate interpretation of the record:

> The Government did not induce Reumayr to do a thing until after (a) Reumayr had, while in prison, spoken of "his intense desire to get even with the United States government," (b) Reumayr had, in a letter dated April 24, 1995, and mailed to Mr. Paxton in New Mexico, invited Mr. Paxton to visit Reumayr in Canada after his parole term expired, (c) Reumayr had, in a letter postmarked August 22, 1995, and mailed to Mr. Paxton in New Mexico, written that he had "other plans," and that he hoped "we won't lose touch because you may be able to take a part and use some of your unique talents to do wonderful things for both of us, (d) Reumayr had, on April 3, 1998, e-mailed Mr. Paxton in New Mexico that he had "other projects on hold. The other ones are nicely planned out with, in some cases, some of the resources in hand, but since I have a very methodical, long-range plan, everything is stopped until I can get up to the island." At this point, all that the Government did was mail a Polaroid picture, after which Reumayr promptly e-mailed Mr. Paxton his excited message about great minds thinking alike.
>
> The parties continued to correspond in this way until the Government was in a position for Mr. Paxton to accept Reumayr's repeated invitations to visit him in Canada. The Indictment shows that it was only after the July 1999 controlled meetings at which Reumayr showed Mr. Paxton where he wanted to bomb the Alaska Pipeline, and gave Mr. Paxton homemade PETN, that the Government had Mr. Paxton tell Reumayr that he needed money for his notional part of the bomb plot, as a result of which Reumayr mailed money orders to Mr. Paxton in New Mexico.

Gov't's Resp. [doc. 119] pp. 25-26 (footnotes omitted).

Moreover, the Government maintains it was Reumayr, not Paxton, who created the Y2K extortion plan, studied explosive devices and poisonous gas materials, required

3

encrypted e-mail, and selected specific targets after a careful study of the pipeline terrain. (Gov't's Resp. pp. 18-19). Finally, while Defendant and Paxton additionally discussed creating and using PETN, "Reumayr had already made enough PETN to initiate the larger charges planned for his bombs." (Gov't's Resp. p. 21).

The Government's rendition of the facts clearly indicates it was Reumayr, not Paxton, who created the concept and planted the seed. Conflicting evidence cannot be resolved by the Court. *Mathews v. United States*, 485 U.S. 58, 63 (1988); *United States v. Fadel*, 844 F.2d 1425, 1439 (10th Cir. 1988). *Cf. United States v. Martin*, 533 F.2d 268 (5th Cir. 1976) (predisposition a jury question).

II.     *Positional Predisposition*

Once again, the parties advance conflicting facts as to whether Defendant would have been able to place explosives on the Alaska Pipeline. Defendant maintains the whole scheme was dependent upon James Paxton for the white fumaric acid, C-4 blasting caps, and battery packs, all of which were necessary for the contemplated scheme. The Government, on the other hand, cites evidence that among the things seized from Reumayr's home were a United States Army manual titled "Explosives and Demolitions" and another titled "Improvised Munitions" as well as manufacturer's specs on high voltage batteries. When Paxton (actually Agent Ortiz) sent the photo of the arsenal he had assembled, Defendant responded in what the Government alleges is their code regarding the "fishing gear" pictured:

> **Received the information package and must say that great minds do think alike. The enterprise I've been alluding to the last few years needs exactly the kind of gear shown.**
>
> **As a collector of fishing gear I love some of the items. I've in fact been learning about the techniques because that is exactly the kind of gear I've been intending to get. I've actually made a number of the items exhibited and had very good results.**
>
> **I know of several locations to make excellent use of the equipment and the fish are just the size to make it worth it.**

(Gov't's Resp. p. 11) (footnote omitted). Moreover, Defendant indicated he had already made PETN and a substitute for the C-4 explosive and could "duplicate" the blasting caps. *Id.*

Whether Defendant could have carried out some version of his alleged plan without Government assistance is apparently to be a subject of substantial expert testimony. Once again, this is an issue for the jury. *Osborn v. United States*, 385 U.S. 323, 331 (1966).

### III.   *Outrageous Conduct*

The defense of outrageous government conduct examines whether a defendant's due process rights have been violated for the purpose of the government creating a conviction. *United States v. Pitt*, 193 F.3d 751, 760 (3d Cir. 1999). In order to sustain the defense of outrageous conduct by the government the challenged conduct must be shockingly outrageous and clearly intolerable; only the most clearly egregious qualifies. *United States v. Mosly*, 965 F.2d 906, 910 (10th Cir. 1992). Based on the current state

of the record, Defendant has not persuaded the Court the Government conduct approaches this level.  *Mosly, supra; United States v. Sandia*, 188 F.3d 1215 (10th Cir. 1999); *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995); *United States v. Cantwell*, 806 F.2d 1463 (10th Cir. 1986); *United States v. Gentry*, 642 F.2d 385 (10th Cir. 1981).  See further discussion in the Court's memorandum denying *Defendant Reumayr's Motion to Dismiss All Charges for Lack of Jurisdiction*.

## O R D E R

For the above stated reasons, *Defendant Reumayr's Motion to Dismiss Based on Entrapment as a Matter of Law* is DENIED.

SO ORDERED this 13th day of December, 2007.

*[signature]*

**BRUCE D. BLACK**
**United States District Judge**