IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                            No. CR 99-1338 BB

ALFRED HEINZ REUMAYR,

        Defendant.

**MEMORANDUM OPINION
AND
ORDER DENYING MOTION TO DISMISS ALL CHARGES
FOR LACK OF JURISDICTION**

**THIS MATTER** is before the Court on *Defendant Reumayr's Motion to Dismiss All Charges for Lack of Jurisdiction* [Doc. 105], and the Court having considered the submissions of counsel and having performed independent legal research, the Court finds the Motion should be Denied.

*Discussion*

Defendant contends "[t]he government orchestrated federal jurisdiction through its informant James Paxton. The only conduct creating extraterritoriality under any statute charged in the indictment was conduct solicited by a government agent." (Def.'s Mot. p. 2). This argument rests on the factual premise that "[w]ithout Paxton's

solicitations from New Mexico, Defendant Reumayr would have no connection to the United States since all of his conduct took place in Canada." *Id.*

The Government challenges both the factual and legal premises on which Defendant's jurisdictional attacks are constructed. The Government notes it was Reumayr who initially contacted Paxton in April 1995 with an offer to entertain him in Canada and another in August 1995 when Reumayr, knowing of Paxton's explosives expertise, said, "Hopefully, we won't lose touch because you may be able to take a part and use some of your unique talents to do wonderful things for both of us." (Gov't's Br. [doc. 119] p. 8). Paxton remembered Reumayr had made statements while in prison about getting even with the United States. Reumayr contacted Paxton again by e-mail on April 3, 1998, and mentioned the poor real estate market was keeping "other projects on hold. The other ones are nicely planned out with, in some cases, some of the resources in hand, but since I have a very methodical, long range plan, everything is stopped until I can get up to the island." *Ibid.* p. 9. It was at this point Paxton approached the Bureau of Alcohol, Tobacco and Firearms with his concerns about Reumayr's "other projects." This would indicate it was initially Defendant Reumayr reaching into New Mexico to gauge Paxton's willingness to participate in Reumayr's "other projects" and not the Government fabricating jurisdiction here.

Legally, Reumayr relies on *United States v. Archer*, 486 F.2d 670 (2d Cir. 1973), to support his claims. Unfortunately for him, *Archer's* facts are easily distinguishable

and its legal value has been severely limited. In *Archer*, federal and state authorities became concerned of rumors of corruption within the New York criminal justice system. "The plan for setting up a crime was conceived at a February 1972 meeting" attended by several agents of the Bureau of Narcotics and Dangerous Drugs ("BNDD"), a New York City police officer, and two Assistant United States Attorneys." 486 F.2d at 671. They set up one of the BNDD agents, Santo Bario, to pose as a member of the Nevada underworld and gave him two loaded pistols, a fake Nevada driver's license, and a false Immigration and Naturalization card, and the New York police officer, Vincent Murano, then arrested Bario at a local diner. Another agent posed as his father and posted bail with BNDD funds. They then recruited a well known felon to introduce the agent to a bail bondsman who "made arrangements" in the District Attorney's office in Queens. In order to "manufacture federal jurisdiction," Bario then had the target Assistant District Attorney return his call to New Jersey.

In reversing defendants' convictions, the Second Circuit held the Government had fabricated federal jurisdiction by having the undercover agent make interstate and later foreign calls. The court noted the *Archer* case was different than the standard sting because "the Government authorized Bario and Murano to engage in crimes under New York law, several of them prior to the discovery of any criminal activity on the part of the defendants and quite independent of the crimes the defendants committed." 486 F.2d at 675. Moreover, there was no reason to believe a federal

interest was implicated. "There was no evidence that, at the time of the February 1972 meeting, the federal law enforcement officers had any information that the supposed corruption of the Queens County District Attorney's office involved violations of the Travel Act, 18 U.S.C. § 1952; the hope was, rather, that in the course of the Bario-Murano scenario ..., some interstate or foreign element might occur, or, if not, might be injected." 486 F.2d at 677 (footnotes omitted). After a substantial discussion of the policies underlying federalism, the Court concluded "[w]hatever Congress may have meant by [18 U.S.C.] § 1952(a)(3) it certainly did not intend to include a telephone call manufactured by the Government for the precise purpose of transforming a local bribery offense into a federal crime...." 486 F.2d at 681.

Rather than merely sending Reumayr the photo of the explosives array cold, the Government maintains it was investigating Paxton's concern that Reumayr was contacting him in New Mexico potentially with a plan to damage an interest vital to the United States. It was allegedly Reumayr, not Paxton, who initiated the initial foreign contacts to explore Reumayr's "other projects" which were already "nicely planned out" with "some of the resources in hand." Indeed, the present case appears more factually analogous to *United States v. Schatt*, 210 F.3d 391 (10th Cir. 2000) (unpublished), where the Tenth Circuit declined to apply *Archer*.

The Ninth Circuit has declined to rely on *Archer,* on more compelling jurisdictional facts than those presented here. In *United States v. Mayer*, 503 F.3d 740

(9th Cir. 2007), FBI Agent Robert Hamer joined the North American Man/Boy Love Association ("NAMBLA") in 2001 while investigating a travel agency he suspected of selling "sex tours" to Thailand.  Nothing came of that investigation, but Agent Hamer retained his membership and began a carefully constructed plan to gain the trust of the NAMBLA leadership by writing articles and joining the steering committee.  After three years of such activity, Agent Hamer was invited to the NAMBLA national convention where he met the defendant who mentioned prior trips to Thailand where he had sex with boys.  The agent and defendant began corresponding about a potential trip to Mexico for similar purposes.  Agent Hamer set up a link to a fake travel agency that had been constructed by the FBI.  The defendant and other NAMBLA members were promised "special friends" and asked about "age preferences."  They sent checks and/or credit card information and the FBI then bought tickets and arranged flights to San Diego.  When the NAMBLA members arrived in San Diego, they were arrested.

The Ninth Circuit considered and rejected the same type of outrageous governmental conduct arguments presented by Reumayr.  In rejecting the contention the government created the crime, the Court said:

> Here, the FBI did not actually create a criminal enterprise.  It constructed a fake travel agency Web site, and Agent Hamer lied about the arrangements he had made for the group.  Like the agent who bribed the legislator in *Carpenter*, Agent Hamer engaged in fictional criminal conduct and lied about being able to facilitate access for Mayer.  *See also United States v. Williams*, 791 F.2d 1383, 1386 (9th Cir. 1986) (refusing to dismiss indictment where prison authorities may have encouraged but did not actually aid jailbreak attempt).  Moreover, the agent did not pay for

>**Mayer's trip, coerce him into buying a ticket, or plant the idea of traveling for illicit sexual conduct in Mayer's mind. While Mayer points out there was no ongoing criminal enterprise that the government was merely trying to join,** *see Gurolla*, **333 F.3d at 950, Mayer was certainly a willing and experienced participant in similar activities.**

530 F.3d at 754.

The Court of Appeals then went on to consider defendants' argument the Government had manufactured federal jurisdiction.  The Ninth Circuit expressly refused to apply *Archer* saying:

>**The bar for proving manufactured federal jurisdiction is similarly high.  In the benchmark case,** *United States v. Archer*, **486 F.2d 670 (2d Cir. 1973), the court of appeals dismissed the indictment where a federal agent made a single phone call from New Jersey to New York in order to generate federal jurisdiction.  The court found that jurisdiction had been "manufactured by the Government for the precise purpose of transforming a local ... offense into a federal crime."** *Id*. **at 681;** *see also United States v. Coates*, **949 F.2d 104, 106 (4th Cir. 1991) (dismissing indictment where the interstate element was contrived by the government for the sole purpose of creating federal jurisdiction).  Here, traveling to another country, where access to young boys would be easier, was part of the plan from inception to execution.  Interstate travel was an integral part of the crime itself, and not contrived simply to guarantee federal jurisdiction.**

530 F.3d at 755.

While not clearly as "an integral part of the crime" as in *Mayer*, the allegations in the Indictment are certainly sufficient to set forth Reumayr's understanding that both explosives he was fabricating as well as those to be supplied by Paxton would move in interstate and/or foreign commerce.  *United States v. O'Connor*, 635 F.2d 814 (10th Cir. 1980).

6

**Not only, then, is *Archer* clearly distinguishable from the present allegations, *Archer's* legal authority has been severely restricted. The Second Circuit has itself recognized *Archer* has very limited applicability and "that manufactured jurisdiction" as an independent doctrine is a dubious concept. *United States v. Wallace*, 85 F.3d 1063, 1065 (2d Cir. 1996). Other circuits have also recognized *Archer* has been largely eviscerated. *United States v. Schatt*, 210 F.3d 391 (10th Cir. 2000) (unpublished); *United States v. Peters*, 952 F.2d 960, 962-3 (7th Cir. 1992); *United States v. Petit*, 841 F.2d 1546, 1553 (11th Cir. 1988).**

## O R D E R

**For the above stated reasons, *Defendant Reumayr's Motion to Dismiss All Charges for Lack of Jurisdiction* is DENIED.**

**SO ORDERED this 13th day of December, 2007.**

                                                                    _____
                                                                    **BRUCE D. BLACK**
                                                                    **United States District Judge**