IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                         Cr. No. 99-1338 BB

ALFRED HEINZ REUMAYR,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of three motions to dismiss filed by Defendant (Docs. 103, 109, 110). These motions request dismissal under Rule 48(b) of the Federal Rules of Civil Procedure, under the Speedy Trial Act and the District of New Mexico's plan for prompt disposition of criminal cases, and under the Sixth Amendment right to a speedy trial. After fully considering all submissions of counsel the Court finds the motions must be denied.

### Discussion

**Sixth Amendment Claim:** A Sixth Amendment speedy-trial claim is analyzed using a well-established balancing test. *Jackson v. Ray*, 390 F.3d 1254, 1260 (10th Cir. 2004). The factors to be balanced are the length of the delay, the reasons for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant caused by the delay. *Id.* None of these factors is a necessary or sufficient pre-condition to a finding that the Sixth Amendment has been violated; instead, the factors must be considered together with any other circumstances that may be relevant. *Id.*, pp. 1260-61.

**Length of Delay:** The Sixth Amendment speedy-trial clock begins to run from the time a defendant first stands accused, either by indictment, information, or arrest. *U.S. v. Marion*, 404 U.S. 307, 321-23 (1971). Defendant points out that by the time he is scheduled to go to trial in February 2008, eight and one-half years will have passed from the time he was indicted in New Mexico and arrested in Canada. This period of time is much longer than the one-year period generally considered to be presumptively prejudicial, and therefore triggers the remainder of the balancing test. *See Jackson, supra*, 390 F.3d at 1261.[1]

**Reasons for Delay:** The second factor, the reasons for the long delay, is the crucial factor in this case. The Government argues that the lion's share of the delay, approximately six years and eight months, was caused by Defendant's repeated and energetic efforts to prevent his extradition from Canada to the United States to face trial in this Court. Furthermore, the Government points out that Defendant has acquiesced in the delays that have occurred since he was extradited to this country, at least until August 2007 when he filed his motion to dismiss. Defendant, on the other hand, contends the Government, by requesting

---

[1] The Government argues that most of the delay is attributable to Defendant, and that this amount of time should be subtracted from the total delay. According to the Government, doing so would obviate the need to perform the remainder of the speedy-trial balancing test. However, it is not appropriate to inquire into the reasons for the delay when deciding whether the delay was long enough to trigger the balancing test. Doing so would unnecessarily conflate the length-of-delay inquiry with the reason-for-delay inquiry. The Government cited no case in which a court combined the two inquiries to determine whether the balancing test had been triggered, and this Court's brief search has not revealed the existence of such a case. Instead, the authorities addressing the issue simply state the length of delay between the date of indictment or arrest and the date of trial. *See, e.g., Doggett v. U.S.*, 505 U.S. 647, 651-52 (U.S. 1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay…").

extradition rather than simply allowing him to be tried in Canada, became responsible for the extreme delays that

occurred during the extradition process. According to Defendant, the reasons-for-the-delay factor should be weighed against the Government. The key question, therefore, is whether the delay resulting from Defendant's efforts to avoid extradition should be charged to Defendant or to the Government.

In addressing that issue it is useful to consider a time-line of the procedures and delays that occurred during the extradition process.[2] Defendant first became accused on August 13, 1999, when a criminal complaint was filed in this Court. He was arrested in Canada on August 18, 1999, on Canadian charges similar to those he faces in this country, and placed into custody. On August 24, 1999, a provisional arrest warrant was executed at the request of the United States, to facilitate extradition of Defendant to this country. According to the extradition treaty between Canada and the United States, the requesting country is required to submit its charging documents within sixty days of the arrest of the defendant. In this case, however, Defendant was not indicted in the United States until November 19, 1999, and the indictment was not submitted to Canada until approximately December 10, 1999. The British Columbia Court of Appeal explicitly found that this delay beyond the sixty-day period was the

---

[2]Most of the dates and characterizations of the reasons for the delays are taken from opinions written by the British Columbia Court of Appeal and the British Columbia Supreme Court during the extradition process. The opinions were issued June 26, 2003, June 16, 2004, and August 2, 2005, and address delay issues that had occurred during the six years prior to the last opinion. [Gov't Exh. 2, 3, 4] Other dates are taken from Defendant's brief.

fault of the United States. [Gov't. Exh. 4, p. 21][3] After the indictment was received by the proper Canadian authorities, the Canadian Justice Minister issued the required statutory authority to begin the extradition proceedings.

A long period of delay then ensued, for several reasons. First, Defendant's counsel did not seek an early extradition hearing, because he "anticipat[ed] an opportunity to cross-examine the key prosecution witness, Mr. Paxton, at the preliminary hearing of the [Canadian] charges scheduled for June 2000." [Gov't Exh. 2, p. 4] This opportunity did not come to pass, however, because in April 2000 the Attorney General for British Columbia stayed the Canadian proceedings "in deference to the U.S. prosecution." [*Id.*] Instead, in May 2000 an extradition hearing was scheduled for December 7-15, 2000.[4] That hearing was not held, however, for reasons that appear to be attributable to both Defendant and the United States: Defendant's Canadian counsel's father died on December 6, and the United States did not present Mr. Paxton to provide live testimony, attempting instead to rely solely on his affidavit. [Gov't Exh. 2, p. 4] This action by the United States, as well as counsel's family exigency, caused the extradition hearing to be adjourned and rescheduled for February 19 - March 7, 2001. Defendant's Canadian counsel then suddenly retired from the practice of law, which meant the hearing could not be held on those dates, and Defendant did not obtain new counsel

---

[3]The Canadian court found the period of delay was one month and 10 days. It is unclear to this Court how the Canadian court reached this figure, as sixty days from August 24, 1999 would have been October 23, and the interval from October 23 to December 10 is one month and 17 or 18 days, depending on whether a thirty or thirty-one day month is used. It is not necessary to try to resolve this possible mathematical discrepancy; doing so would not change the analysis.

[4]There is no clear explanation in the record as to why the hearing could not be scheduled at a time sooner than December, although it appears conflicting schedules between the court and Defendant's counsel played a role.

4

until March 28, 2001.  [*Id.;* Def. brief p. 9]  The extradition hearing was reset for September 2001.  Of the period of delay from December 2000 to September 2001, the British Columbia Court of Appeal attributed two and one-half months to the United States, due to the last-minute refusal to produce Mr. Paxton in person.  [Gov't Exh. 4, p. 21]  This Court sees no reason to disregard that determination.

The remainder of the six-and-one-half-year period was consumed by various decisions by Canadian courts and authorities, and appeals of those decisions by Defendant.  On October 31, 2001, the judge presiding over the extradition hearing granted the extradition request as to two of the four charges.  This decision was automatically sent to the Minister of Justice for review, in accordance with Canadian procedure.  The Minister did not issue a decision until May 24, 2002; in that decision the Minister allowed extradition to occur as to all four of the charges, not just the two authorized by the judge in the extradition proceedings.  Defendant appealed the original decision allowing extradition on two counts, as well as the Minister's decision allowing extradition on all four counts, to the British Columbia Court of Appeal.  That court issued a decision on June 26, 2003, over a year after the Minister's decision; unfortunately, the court's opinion did not end the matter because the court remanded the issue of the "extra" two counts to the Minister, essentially ordering the Minister to reconsider the question of whether extradition should be allowed on only two counts or on all four counts.

Another long period of delay ensued, through no fault of either Defendant or the United States.  In March 2004, the Minister requested an opinion from the United States concerning this country's law on "attempt" crimes as applied to Defendant's alleged activities.  The United States provided this opinion approximately two months later.  Finally, on

November 9, 2004, the Minister issued a decision reiterating its earlier determination that Defendant would be extradited on all four counts, rather than just two. As was his right, Defendant appealed this new decision to the British Columbia Court of Appeal. Less than a year later, on August 2, 2005, the Court of Appeal upheld the Minister's decision. Defendant requested review of the Court of Appeal decision by the Supreme Court of Canada, which denied his request in April 2006. Defendant was surrendered for extradition to this country on April 26, 2006.

It is readily apparent from examining the above procedural history that the Government can be considered directly responsible for only a small portion of the delay that occurred during the extradition proceedings. This small portion consists of the one month and ten or more days by which the Government exceeded the initial sixty-day period in which to submit an indictment to Canada; the two-and-one-half months between the originally-scheduled start of the extradition hearing in December 2000 and the postponed date of that hearing, in late February 2001;[5] and, perhaps, a month or so because it took two months for the Government to respond to Canada's request for an opinion concerning the law of attempt crimes in the United States. This is a total of approximately five months out of the six-and-one-half-year time period that was spent litigating the extradition proceedings.

Given the small amount of delay directly caused by the Government, Defendant attempts to bolster his speedy-trial claim by holding the Government responsible for all of the

---

[5] As noted above, the delay in scheduling the hearing after that date was due to Defendant's Canadian counsel's retirement from the practice of law and Defendant's consequent need to retain new counsel, delay which can in no way be considered caused by the United States.

delay caused by the Canadian Minister of Justice and the numerous back-and-forth and up-and-down proceedings that occurred during the extradition process. His argument in support of that position is novel but simple. He contends it was the Government's choice to reach into Canada, where he was living not as a fugitive from the United States but as a lawful Canadian citizen, and pursue the extradition proceedings in the first place. He points out that the Government had the option of allowing Canada to prosecute its own charges against Defendant in Canada, but insisted on pursuing the extradition process and forcing Defendant to stand trial in this country. Finally, he distinguishes his situation from one in which an individual commits a crime in the United States, then flees to another country to avoid prosecution. In that situation, he concedes, the time spent fighting extradition would in most circumstances weigh against the defendant rather than the Government. Defendant, however, has not fled to avoid prosecution. Instead, he has remained at all times outside the United States, willing to go to trial in Canada on Canadian charges, only to be subjected to extradition proceedings designed to drag him into this country for prosecution. In that situation, according to Defendant, all of the time consumed during the extradition process must be assigned to the Government when assessing the reasons for the long delay in this case.

    Defendant's argument, while creative, is not persuasive. Despite the fact that the Government had no control over the Canadian proceedings, had no way of speeding up the process, and was forced to wait for over six years while Defendant pursued all avenues of appeal in an attempt to avoid extradition, Defendant's argument would assign the entire period of delay to the Government as a matter of law. However, the nature of extradition proceedings argues against such a result. Extradition proceedings are not ordinary criminal

proceedings; extradition is ultimately a function of the executive branch, not the judicial branch. *See Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828-29 (11th Cir. 1993). As a result, constitutional guarantees that apply to criminal proceedings do not apply to extradition proceedings. *Id.* In particular, there is no right to a "speedy extradition" and an individual held by the United States for extradition to a foreign country therefore cannot contest the extradition by arguing the proceedings have taken too long. *See Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994); *Martin, supra*; *In re Extradition of Burt*, 737 F.2d 1477, 1486 (7th Cir. 1984); *In re Rodriguez-Ortiz*, 444 F.Supp.2d 876, 884 (N.D. Ill. 2006). Similarly, foreign countries extraditing defendants to this country are entitled to follow the extradition procedures established by their laws, and the United States is not responsible in a Sixth Amendment sense when those laws and procedures create delays, however long.

This result also comports with applicable or analogous law in the speedy-trial context. Courts have recognized that a defendant resisting extradition, or otherwise avoiding attempts to bring him to this country, is attempting to avoid going to trial at all in the United States. This is the opposite of insisting on a speedy trial. For that reason, absent unusual circumstances, courts have uniformly held the defendant, rather than the government, liable for delay caused by extradition proceedings or by other attempts to remain outside the United States. *See, e.g., United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995) (defendant could not "avoid a speedy trial by forcing the government to run the gauntlet of obtaining formal extradition and then complain about the delay that he has caused by refusing to return voluntarily to the United States"); *In re Bramson*, 1997 WL 65499 (4th Cir. unpublished) (defendant being held in Liechtenstein for extradition proceedings could presumably return to

the United States and stand trial of his own volition at any time; therefore, for speedy-trial purposes he is responsible for the delay); *United States v. Mitchell*, 957 F.2d 465, 469 (7th Cir. 1992) (defendant's fugitive status and use of a false name in Colombia were principal reasons for delay in bringing him to trial in United States; for speedy-trial purposes, United States was not responsible for delays caused by Colombia's internal battles over extradition, or periods of time during which Colombia refused to allow extradition); *United States v. Wangrow*, 924 F.2d 1434, 1437-38 (8th Cir. 1991) (defendant's attempts to conceal his identity from United States, while incarcerated in Mexico, indicated he did not want to be extradited to face trial in this country; therefore, government's failure to extradite him during that incarceration did not violate his speedy-trial rights).[6]

The only exceptions to the above rule have occurred where the government was dilatory or negligent in pursuing extradition. In such cases, courts have been willing to hold the government responsible for the delay between accusation and trial, even if the defendant is out of the country for much of that period of time. *See, e.g., United States v. Pomeroy*, 822 F.2d 718, 721-22 (8th Cir.1987) (government's failure to seek extradition of defendant from Canada, despite defendant's requests that the government do so, meant delay while defendant was incarcerated in Canada was attributable to the government); *United States v. McDonald*, 172 F.Supp.2d 941, 948-49 (W.D. Mich. 2001)(where government knew where defendant

---

[6]Defendant argues he should not be lumped into the same category as fugitives who commit a crime in the United States, then flee to avoid prosecution and resist extradition when they are located. However, his motivation in litigating the extradition proceedings in this case was exactly the same as a fugitive's motivation: he was attempting to avoid being put on trial in the United States. Whether or not a defendant is a fugitive, he cannot be allowed to first resist efforts to bring him to trial in this country, and then turn around and try to use the delay caused by that resistance as a reason to dismiss the charges brought against him.

was, or could have easily located him with minimal effort, and there was extradition treaty between Bahamas and United States, government's failure to even attempt to extradite defendant for over ten years from date of indictment meant the delay should be attributed to government for speedy-trial purposes).[7] The analysis and results in cases like these make sense, given the purposes of the speedy-trial guarantee. Where a defendant is not attempting to avoid being tried, and does nothing to frustrate attempts to bring him to this country to face such a trial, delay by the government in initiating extradition procedures is properly attributed to the government rather than the defendant. Where it is apparent, however, that the defendant does not want a speedy trial (or any trial, for that matter) in this country, and resists the government's efforts to hold such a trial, the delay caused by that resistance is properly attributed to the defendant. Again, it does not matter whether that resistance takes the form of deceitful attempts to avoid detection, or simply vigorous litigation of extradition proceedings; the goal of both forms of resistance is the same, to avoid being tried in the United States.

Defendant contends he should not be forced to choose between his lawful right to resist extradition and his right to a speedy trial. However, the two rights are incompatible, and therefore a defendant can indeed be forced to choose between the two. A defendant who desires a speedy trial in the United States cannot have an expeditious trial if that same

---

[7]Defendant relies heavily on *McDonald*, arguing that because, like Mr. McDonald, he did not flee the United States to avoid prosecution or hide his location from the Government, the delay in his case should be the Government's responsibility, as it was in *McDonald*. However, there is one conspicuous and critical difference between Defendant's case and *McDonald* – in this case, the Government did not sleep on its extradition rights at all, let alone for over ten years. Instead, the Government initiated the extradition process only a few days after Defendant was arrested, and most of the ensuing delay was caused by entities other than the Government.

defendant also wishes to exercise all of his procedural options to contest the extradition process; the time spent litigating the extradition issue automatically delays the trial that the defendant supposedly desires. In this case, Defendant chose to strenuously resist the Government's efforts to extradite him to the United States to face trial here, instead of indicating a desire for a speedy trial by foregoing the extradition process. Almost all of the delay resulting from the extradition process, therefore, must be counted against Defendant in assessing the reasons for the long delay that has occurred in this case.[8]

As noted above, Defendant has not argued that the Government is responsible for any delay that has occurred in this case following his extradition to this country. The Court agrees that this delay is not attributable to the Government. Instead, it is the result of the complexity of this case and of some difficulties endured by an attorney previously representing Defendant in this case, the details of which need not be discussed. Therefore, this period of delay is either neutral or weighs against Defendant. In sum, the "reasons for the delay" factor weighs heavily against Defendant, rather than the Government.

**Assertion of Right:** As the Government points out, Defendant did not formally assert his right to a speedy trial in this country until he filed his motion to dismiss in August 2007. In fact, some courts consider resistance to extradition as the opposite of an assertion of the

---

[8]There is a suggestion in some cases that resistance to extradition efforts can act as a complete waiver of a defendant's speedy trial rights. *See United States v. Manning, supra*, 56 F.3d at 1195 (defendant's affirmative resistance to government's efforts to secure his presence in the United States, including forcing the government to pursue formal extradition, constituted an intentional relinquishment of his constitutional right to a speedy trial); *United States v. McDonald, supra*, 172 F.Supp.2d at 950 (filing of an extradition contest may, in some cases, constitute waiver of right to speedy trial). Given the result of the Court's balancing of the speedy-trial factors, discussed below, the Court need not determine whether such a waiver occurred in this case.

11

right to a speedy trial, and as noted above consider it a waiver of that right.  The Court need not go that far; instead, the Court will simply weigh this factor against Defendant.  *See Mitchell, supra*, 957 F.2d at 469 (where overseas defendant made no attempt to demand a trial, waive extradition, or otherwise seek to return to the United States to stand trial, and first asserted his right to speedy trial in a pretrial motion, this factor weighed against defendant). In doing so, the Court has considered Defendant's argument that he asserted his right to a speedy trial by complaining of the delay in the extradition proceedings, and by requesting dismissal of those proceedings due to the delay.  However, complaining to the Canadian government and Canadian courts of delays in their extradition process is not the same as asserting a right to a speedy trial in an American court.   Defendant was certainly entitled to complain of the long delays that occurred during the extradition process, and to request that he be released from custody while that process was unfolding.  However, those complaints and requests are essentially irrelevant to the issue of whether, or when, he asserted his right to a speedy trial in this Court.

     **Prejudice from Delay:**  Defendant has clearly suffered prejudice from the long delay that has occurred in this case, as he has been incarcerated, either here or in Canada, for the entire period of that delay.  Defendant has also suffered significant personal and familial setbacks in the past eight years.  In addition, at least one witness critical to the Government, Mr. Paxton, has died.  Since most of the delay is attributable to Defendant, however, the prejudice he has suffered cannot be weighed against the Government.

     **Balancing:**  On balance, Defendant's right to a speedy trial has not been violated.  As discussed above, he spent six and one-half years attempting to avoid any trial at all in this

country, rather than demanding a speedy trial.  From this fact alone flows a determination that the delay in trying Defendant, as well as any prejudice suffered as a result of that delay, is largely attributable to Defendant rather than the Government.  Therefore, dismissal of this case is not warranted.  *See, e.g., United States v. Askew*, 584 F.2d 960, 962 (10th Cir. 1978) (greater part of the delay was caused by the defendant himself; a defendant will not be heard to complain about delay for which he was the cause).

**Rule 48(b) Claim:**  Rule 48(b) of the Federal Rules of Criminal Procedure states: "The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: … (3) bringing a defendant to trial."  Defendant contends such unnecessary delay has occurred in this case, and asks the Court to exercise its discretion and dismiss this case. Although Rule 48(b) is not limited by the Sixth Amendment right to a speedy trial, it is driven by the same general considerations.  *United States v. Ward*, 211 F.3d 356, 361-62 (7th Cir. 2000).  The Rule is particularly focused, however, on some type of fault by the government, resulting in lack of diligent prosecution.  *See United States v. Yuan Qing Jiang*, 214 F.3d 1099, 1101 (9th Cir. 2000) (prior to dismissing under Rule 48(b), the court must find prosecutorial misconduct and actual prejudice to the accused); *Ward, supra*, 211 F.3d at 362 (where there was no evidence of purposeful delay by the prosecution, district court did not abuse its discretion in denying motion to dismiss brought pursuant to Rule 48(b)); *United States v. Goodson*, 204 F.3d 508, 513 (4th Cir. 2000) (Rule 48(b) restates a court's inherent power to dismiss an indictment for want of prosecution).

There is no indication of purposeful delay or other lack of prosecution of this case by the Government.  The Government initiated extradition proceedings in a timely manner and

13

has not acted to delay the case since Defendant was brought to this country to face the charges. As discussed above, Defendant and not the Government has been responsible for most of the delay that has occurred. Therefore, the Court finds there has been no unnecessary delay on the part of the Government in bringing this case to trial, and declines Defendant's request to dismiss this case under Rule 48(b).

**Speedy Trial Act and District Court Speedy Trial Plan Claim:** Defendant requests dismissal pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, which provides in pertinent part that an indictment must be filed within thirty days of the date a defendant is arrested. 18 U.S.C. § 3161(b). Defendant contends the indictment was not filed until eighty-seven days after he was arrested in Canada on the extradition warrant. He also argues that even if the Government was entitled to an extension of thirty days because it is not clear whether a grand jury was in session during the first thirty-day period, *see id.*, the indictment still came twenty-seven days too late. This argument fails because Defendant, who was incarcerated in Canada and was entitled to (and did) contest the Government's efforts to extradite him to this country, was "unavailable" by the explicit terms of the Speedy Trial Act. 18 U.S.C. § 3161(h)(3). All of the time between his arrest in Canada and his indictment eighty-seven days later, therefore, must be excluded in determining whether the indictment was timely filed.

The relevant provision of the Speedy Trial Act states, "[t]he following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed … [a]ny period of delay resulting from the absence or unavailability of the defendant…" 18 U.S.C. § 3161(h)(3). A defendant is considered to be unavailable if the defendant's

whereabouts are known, but his presence cannot be obtained by due diligence or he resists appearing at or being returned for trial. § 3161(h)(3)(B). In this case, Defendant resisted being returned to the United States for trial and his presence in this country could not be obtained by due diligence until Canada decided to honor the Government's extradition request. Therefore, during the period in question he was unavailable for purposes of the Speedy Trial Act. *See, e.g., In re Bramson*, *supra*, 1997 WL 65499 (stating that defendant who was being held for extradition to the United States was unavailable, and delays caused by that unavailability should be excluded for purposes of the Speedy Trial Act); *cf. United States v. Cabrera Sarmiento*, 659 F.Supp. 169, 172 (S.D.N.Y. 1987) (defendant was not available for trial in Southern District of New York because his extradition by the Colombian government did not authorize prosecution on charges in that district; therefore, Speedy Trial Act exclusion based on unavailability of a defendant was applicable); *cf. United States v. Nabors*, 901 F.2d 1351, 1355 (6th Cir.1990) (defendant's rights under the Speedy Trial Act were not violated by thirty-three day delay between arrest and indictment, because defendant was hospitalized for six of the days and was therefore unavailable). The indictment filed eighty-seven days after his arrest is not subject to dismissal.[9]

The same analysis applies to Defendant's claim that this Court's plan for prompt disposition of criminal cases was violated by the allegedly tardy indictment. The plan

---

[9] Defendant argues there was no need for him to be present for the Government to obtain an indictment, and points out the Government in fact obtained an indictment in his absence. The Speedy Trial Act's exclusion of time, however, is not based on any necessity that the defendant be present. It specifically excludes the time during which a defendant is unavailable from the time in which an indictment must be filed, and Defendant fits the Act's definition of unavailability. Therefore, whether or not it was necessary for Defendant to be present to be indicted, the provisions of the Act have not been violated in this case.

incorporates the same exclusion periods as those contained in the Speedy Trial Act. Defendant's argument based on the plan must therefore fail as well.

**Conclusion**

For the reasons discussed above, Defendant's motions to dismiss based on the Sixth Amendment right to a speedy trial, Rule 48(b) of the Federal Rules of Criminal Procedure, and the Speedy Trial Act will be denied.

## ORDER

A Memorandum Opinion having been filed this day, it is hereby ORDERED that Defendant's motions to dismiss (Docs. 103, 109, and 110) be, and hereby are, DENIED.

Dated this 26th day of December, 2007.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE