IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                  CR No. 99-1338 BB

ALFRED HEINZ REUMAYR,

        Defendant.


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR CONSENT VERIFICATION PROCEEDING[1]

THIS MATTER is before the Court on an Order of Reference [Doc. 245] pursuant to 28 U.S.C. § 636(b)(1)(B), designating the undersigned Magistrate Judge to conduct all appropriate hearings at the conclusion of Defendant Alfred Reumayr ("Reumayr")'s sentencing proceeding on August 7, 2008. The proposed hearing is on Reumayr's Motion to Incorporate Defendant's Verification of Consent to be Transferred back to Canada Into the August 7, 2008 Sentencing Hearing [Doc. 243], filed August 1, 2008. The Government filed a Response [Doc. 244] on August 5, 2008. No Reply is necessary, and for the reasons stated herein, no hearing is necessary.

The Court finds that the request for a consent verification hearing is premature and recommends that the Motion be denied without prejudice.

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

Chapter 306 of Title 18 of the United States Code (18 U.S.C. §§ 4100-4115)[2] sets forth procedures to implement treaties for the transfer of offenders to and from foreign countries. If a treaty providing for the transfer of offenders is in effect between the United States and another country, subject to compliance with treaty provisions, an offender may be transferred to the country of which he or she is a citizen or national in order to serve the remainder of his or her sentence.

Defendant Reumayr states that he is a Canadian national and, upon his transfer to the Federal Bureau of Prisons, wants to apply for a prisoner transfer back to his home country. "In the interests of judicial economy" [Doc. 243, at 2], Reumayr asks that the verification of his consent be combined with his sentencing hearing, set for August 7, 2008, to avoid any additional burden on the criminal justice system that scheduling a separate hearing would entail. [Id.].

Before a prisoner may be transferred, the transferring country, the receiving country, and the offender must all give their consent to the change in custody. *See* Rosado v. Civiletti, 621 F.2d 1179, 1199 (2d Cir. 1980) ("The consents contemplated by the Treaty entail much more than simple expressions of the desire to transfer, and the permission to do so. They also include reciprocal representations by each of the parties upon which the others rely in deciding to give their consent").

The consent verification hearing occurs close to the end of the prisoner transfer process, not at the beginning. Its purpose is to ensure compliance with all treaty and statutory preconditions.

For example, under 18 U.S.C. ch. 306 and implementing regulations, the federal officer must determine that the transferor country and the receiving country have both given preliminary approval to the proposed transfer. That preliminary approval has not been given by either Canada or the United States. In addition, the judge must receive certification from the chief law enforcement

---

[2]*See also,* Act of Oct. 28, 1977, Pub. L. No. 95-144, 91 Stat. 1212 (codified as amended at 10 U.S.C. § 955, 18 U.S.C. §§ 3006A note, 3244, 4100-4115, and 28 U.S.C. § 636(g)).

2

officer in the transferor country that no criminal charges are pending against the applicant. No such certification is yet available. The judge must also make findings on "double criminality" under 18 U.S.C. § 4111. This finding generally requires review of court transcripts to determine adherence to procedural requirements and a comparison between the laws of the transferor and receiving countries. Many of the required findings which the judge must make before the transfer is deemed knowing, willing, voluntary and in compliance with statutes and treaties cannot be made at this juncture and require much administrative processing.

It is undisputed that the United States and Canada are signatories to the Convention on the Transfer of Sentenced Persons and, conditioned on the Canadian government and the United States government preliminarily approving the proposed transfer, a well-defined procedure exists to conduct the requested consent verification proceeding. In this case, if Defendant is a citizen of Canada and obtains pre-approval from the Canadian government and from the United States Department of State for a transfer of his person and sentence to Canada for purposes of serving his sentence, then a detailed procedure is triggered by the treaty provisions and by United States law.

As the Government points out, Reumayr is correct in asserting that judicial verification of his consent is part of that procedure and will ultimately be required prior to transfer. In the case of an offender transferring from the United States to a foreign country, the verification must be performed pursuant to 18 U.S.C. § 4107(a) "by a United States magistrate or a judge as defined in Section 451 of Title 28, United States Code."

However, prisoner transfers constitute agency action committed to agency discretion by law. Brancaccio v. Reno, 964 F. Supp. 1 (D.D.C. 1997). 18 U.S.C. § 4102 sets forth the authority and responsibilities of the Attorney General of the United States relating to the transfer of offenders to and from the United States. The Attorney General has delegated authority under § 4102 to the

Office of Enforcement Operations, a part of the Criminal Division of the U.S. Department of Justice. 28 CFR § 0.64-2 (2007). Pursuant to this delegation of authority, the Office of Enforcement Operations reviews the requests of each offender to transfer to or from the United States. If the office determines that the transfer is appropriate under the statute and applicable treaty, it approves the transfer on behalf of the United States and coordinates arrangements for the judicial consent verification proceeding and transfer.

Defendant seeks to put the cart before the horse by having the judicial consent verification proceeding conducted prior to the time the Office of Enforcement Operations of the Criminal Division for the Department of Justice has received, reviewed or approved the application, and prior to the time that the Ministry of Justice or other authorized agency in the Canadian government indicates its willingness to accept this defendant into Canada for purposes of serving his sentence. Unless both the transferring and receiving countries agree to the proposed transfer, no consent verification hearing is necessary.

In addition, Bureau of Prisons ("BOP") policy does not permit a person under sentence to formally request a transfer until the prisoner arrives at his designated BOP institution and fills out the appropriate BOP forms. [*See*, BOP Policy Statement 5140.34, Ex. 1 to Doc. 244].

While the Court appreciates Reumayr's interest in moving this process forward, it would be significantly premature to consider the request for transfer immediately after sentence is imposed. No one knows at this time whether Defendant intends to appeal his sentence, and the time for doing so has not yet elapsed. No one knows at this time whether the judgment and sentence will be subject to collateral attacks. Depending on Defendant's decision, both appeals and collateral attacks prevent transfer proceedings.

The Government states, on information and belief, that a formal system for processing

transfer requests from the United States to Canada is in place and operates efficiently. Specifically, the Government says that the International Prisoner Transfer Unit ("IPTU") in the Office of Enforcement Operations of the U.S. Department of Justice agrees each year with its Canadian counterpart on the exact dates for quarterly transfers to Canada. These transfers normally occur in March, June, September and December each year. The consent verification procedure is as follows:

> A single Consent Verification Hearing ("CVH") is held for each quarterly transfer to Canada. Well before each such transfer, IPTU schedules the CVH for that group of prisoners. There are U.S. Magistrate Judges who regularly handle these hearings. The hearings are transcribed. Each prisoner is represented by counsel, and counsel is appointed for those who cannot afford to hire counsel. The hearings are handled pursuant to an established routine and, in the case of the quarterly transfers to Canada, it is standard procedure for a group consent verification to be held, normally within one day of transfer, during which the Magistrate Judge holds individual serial colloquies with each offender who has been approved for transfer. Accordingly, there would be no "judicial economy" in duplicating these efforts by holding a separate and additional hearing for an individual Canadian transfer applicant.

[Doc. 244, at 4].

While the undersigned Magistrate Judge would be pleased to conduct a prisoner verification proceeding, and, at the request of the Department of State, has conducted such proceedings extraterritorially, this prisoner verification proceeding is premature. As the Government notes, a process is currently in place for Reumayr to make his request at the proper time and place, and proceeding to a consent verification hearing at this time would constitute a duplication of effort and would likely cause delay and confusion. Defendant must proceed through the proper channels and make his intentions known to the appropriate designees in both the transferring and receiving nations as required by the bilateral treaty provisions existing between Canada and the United States.

In sum, Defendant's request to conduct a prisoner verification proceeding is denied, without

prejudice. He should proceed, if he is so interested, to submit the appropriate applications and secure the appropriate preliminary approvals from both governments. Thereafter, his consent will be judicially verified in accord with the process in place for transfers from the United States to Canada.

**Recommended Disposition**

That Defendant Reumayr's Motion for a Consent Verification Hearing on August 7, 2008 [Doc. 243] be denied.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge